221546 Sony Interactive Entertainment versus Intellectual Pixels Limited. Mr. Dowd. Good morning, your honors. May it please the court, my name is Jim Dowd and I'm appearing on behalf of Appellant Sony. May I proceed? Yes. The board's final written decision commits two errors that I plan to address with your honors this morning. The first is the board's decision analyzed the wrong obviousness combination. This is a legal error reviewed de novo. The second is the board refused to consider Sony's supplemental reply, which was an abuse of discretion. To kind of level set, there's only one claim that's at issue in this appeal, which is dependent claim four. Claim four depends from claim one, which the board found was invalid based upon two references, Schmidt and Kesslin. Okay, so can I just cut to the chase? Just a lot of your friend's argument on the other side seems to be the evolving theories you had. One, two, three, four, I lost count. So can you tell us what your theory with regard to Schmidt was in the in your initial petition? Yes, your honor. The theory in the petition, and this is at A58, 5080, was that a person of skill would have been motivated to- Give me a second. Yes, your honor. What's the site? 5080. Got it. And at 5080, you'll see the theory of the petition is that a person of skill would have been motivated to apply the standards teaching, the teaching, of an inter-frame spacing delay to Schmidt's client server system. Not the whole of the standard, not collision detection, not CSMACD, which is just the Okay, but there's no reference in the petition to the 1998 standard, right? There is not, your honor, and we don't need the 1998 standard to prevail because- Why not? The teaching of an inter-frame spacing delay is in the 1985 standard. That same teaching is expressed identically in the 1998 standard. So if we disagree with you and say that the 1988 standard is essential, the board was right in saying that you didn't raise the right part of that until a server fly and you lose, right? I would respectfully disagree, your honor, for two reasons. Number one is the teaching of an inter-frame spacing delay, if we step back to what the claim is for a second, all of claim one- I think you're not accepting my hypothetical. My hypothetical is if we conclude that the 1998 standard is essential to the obviousness theory, that wasn't raised in the petition, the right part of it wasn't raised until the server fly, and you'd lose on this issue, right? Again, your honor, I would respectfully disagree, and if I can, just walk your honor through that. But I want you to walk me through it with my hypothetical, accepting my hypothetical rather than fighting. And I'm going to attempt to do that, your honor. And the reason is, if you start with what the petition argues, the petition says that it's the teaching of an inter-frame spacing delay. You're not accepting my hypothetical. You are simply not. What I said is, if we hold that the 1998 standard is essential to the obviousness theory, you lose. I mean, you may argue that it's not essential, and that's what you are arguing, but if it is essential, you lose, right? The reason that I would say no, your honor, is because of the sequence of arguments that happened from the petition. Counsel, are you relying on the 1998 standard? Are you relying on the 1985 standard? We're relying on the 1985 standard, and the 1998 standard is simply evidence that is responsive to the argument that IPL made. IPL was the first to submit the 1998 standard. It did it by submitting an incomplete abstract, which it then argued in its POPR and in its POR. But if we think that your motivation to combine doesn't make sense because the 1985 standard, because Schmidt refers to a faster standard, if we think we need Schmidt to require reference to the 1998 standard, then what would your argument be then, if that's the hypothetical? I think that's the hypothetical. It's that whether it's the 1998 standard or the 1985 standard. No, no, but if we think you need the 1998 standard. Yes, your honor. Just hypothetically, then is that the end of your case? I don't believe it is. Okay, so let's assume that you need to have the 1998 standard then. Okay. What is your argument then? My argument is that the reason that the 1998 standard came into this case at all is that in its patent owner preliminary response, IPL submitted a copy of that standard, but it submitted an abstract, not the actual standard, and it said, oh, a person of skill would not have combined inter-frame spacing with Schmidt because the 1998 standard is 100 megabits per second, not 10. That was their argument. We responded to that, and under this court's- You're still not answering the question. I mean, I'm sorry. You're just not answering it. You're wandering around saying the 1988 standard is not essential to your theory, and we're asking you if we're to decide that it is essential to the obviousness thing, because you didn't raise it in the petition or, in fact, the right part of it in the reply. Let me try to be as direct as I can. This court's precedent says we can respond to arguments raised by the petitioner, I'm sorry, by the patent owner, after the petition, and I would commend to your honors Intel versus PACT, which was decided after our briefing. In the reply, you didn't even cite the part of the 1998 standard that you're relying on in the cert reply. We did, your honor. In the reply, we cited the 1998 standard and specifically inter-frame spacing in response to the argument that the POR had made about 10 versus 100 megabits. The issue of full versus half duplex, which is what the board ultimately relied on, IPL didn't raise that issue until a cert reply after our reply, and it's that issue which the board then picked up on and then compared the wrong thing. It compared collision detection as a part of the combination, but collision detection is not part of the combination. The combination is inter-frame spacing alone, and the point that we made in our response to the cert reply, which, of course, the board did not consider and we would suggest is error not to consider, is that whether it's full duplex or half duplex, whether it's 10 megabits per second or 100 megabits per second, inter-frame spacing is used consistently independently of whether collision detection is used. I hear you. Anyway, I have other concerns that I want to ask you about. I see this as being not too easy of an issue, and maybe if I were the party that were ruling on this in the first instance, I may have ruled differently, right, on whether your reply was responsive or not, but there's a very deferential standard over here. So some of the things I'm looking at here include that in your reasonable expectation of success discussion in your petition, you do reference CSMACD, and you say that there would have been a reasonable expectation of success because you would use the Ethernet's inter-frame spacing would simply be used for its intended purpose of providing the inter-frame recovery for CSMACD, and then additionally, on page A5078, there's, you know, again, more discussion of collision detection, and also on page 5079. I agree with you that when you described your motivation to combine, you didn't refer to the collision detection, but everywhere else, including the reasonable expectation for success, you did. So why doesn't that support the Board's ruling in this case? The reason is because, Your Honor, what we were using was the name of the standard. The name of the standard is Carrier Sense Multiple Access with Collision Detection, CSMACD. That's the name the IEEE chose to give to the 1985 standard. That's at A1477. Coincidentally, if we look at the 1998 standard, that's at A1973. It has the identical name. It is the same standard. It's just the name of the standard, and we didn't bodily incorporate the entirety of the standard. We said only this teaching is what we are using. And the teaching, if I take you to it, of inter-frame spacing, in the 1995, I'm sorry, 1985 standard, it's at A1513. It's section 4.2.3.2.2. It's independent of any other thing. There's a separate section on collision handling that is below that. There's a separate section on collision detection that's below that yet again. All we refer to is the inter-frame spacing section. If I take, Your Honors, to the 1998 standard, and this is at A2066, you see the same structure in the 1998 standard. On page 2066, there's section 4.2.3.2.2, which is inter-frame spacing. It is described identically. This is intended to provide inter-frame recovery time for other CSMA CD sublayers and for the physical medium. That's the benefit that we called out. It's the same benefit for fast Ethernet in 1998 as it was in 1985. If you look just above what I'm quoting, there's a section on full duplex mode. On page 2066, it says the MAC, which is the media access control layer that this standard is defining, continues to defer for a proper inter-frame spacing, and it cites that same section. In full duplex mode, the evidence is you still use inter-frame spacing. If I return to this court's decisions, and the case, for example, of Anacor, what this court has held is that the petitioner in an inter partes review proceeding may introduce new evidence after the petition stage if the evidence is a legitimate reply to evidence introduced by the patent owner. So first, this was a reply to the argument made in the POR and in a surreply, and then also if it is used to document the knowledge that skilled artisans would bring to bear in reading the prior art identified as producing obviousness. Well, a person of skill here would understand that inter-frame spacing did not change from 1985 forward, and it's used in every version of the Ethernet standard. That's the point. And it is not disputed that inter-frame spacing discloses Claim 4. It discloses that element of Claim 4, which is simply a delay before sending a known signal. So there really is, I think, no dispute on that, but Your Honor, I didn't mean to cut off your question. I was just going to ask. I think in some of the cases that I was looking at, the difference was that the new evidence that was provided was to explain how the reference cited in the petition works. Here, it feels more like it's just a minute. It feels more like the new reference is provided to explain, hey, there's been no change, and this is really what we meant to cite because this is the standard that's actually used by the primary reference. Well, we cited the 1985 version because it demonstrates that this Claim 4, this inter-frame spacing delay, is something that had been known for 15 years by the time that we get to the 093 patent. This is old technology. It is nothing new. There seems to have been, we did not bodily incorporate collision detection or the rest of the protocol. It's simply that a person of skill reading Schmidt, reading that it would use Ethernet, would immediately recognize the benefit of having an inter-frame spacing delay as a part of its transmission scheme because that's what Ethernet has always done, and it continues to do so. And it was only because IPL then said, oh, there's a difference between 100 and 10 megabits per section per second, that we responded and said, no, there isn't. That's counterfactual. Here's the evidence to show there is no difference. And then it changed arguments yet again. It changed from arguing the 100 to 10 to arguing full duplex versus half duplex. That came up for the first time in a SIR reply, which comes after our reply, obviously after we have a chance to address it. That's the first time this half duplex, full duplex argument was made, and the argument was, and was accepted by the board, that because Schmidt is full duplex, it wouldn't use collision detection, and therefore our combination fails. That was the finding of the board, but that wasn't our combination because we never argued to combine with collision detection. We argued specifically the teaching of inter-frame spacing at A5080, and that's all we argued. Thank you. Thank you, Your Honor. Mr. Wilson. Thank you, Your Honors. This appeal should be affirmed for three reasons. First, Sony argued its first theory of invalidity in the petition. The board rejected it. Sony doesn't challenge that finding on appeal. Number two, this appeal is not about that first theory. It's not even about the second theory raised for the first time in its reply brief. This appeal is only about the third theory raised after all normal briefing had been completed. Could you, when you say first theory, second theory, third theory, you want to give more detail on what you're referring to? Absolutely, Your Honor. The first theory is that claim four was invalid based on a combination of Schmidt with the 1985 standards based on the use of the CSMA CD protocols. And I just heard counsel assert that that's not true. They just referred to that as the name. But I would point, Your Honors, to Joint Appendix 5080. Are you looking at the opinion of the board? I'm looking at their underlying briefing. It's A58? 5080, I'm sorry. Yeah, that was the page that your friend cited. Thank you. Actually, I'm sorry. Let's look at page 5078. So counsel just said they only referred to CSMA CD as the name of the standard. But right there on page 5078 at the bottom, you'll see them quoting page 38 of the standard, which you will find at JA 1512, 1512. And if you look there, the portion that's being quoted is from the bottom of the page, section 4.2.3.2.1, carrier deference. That's exactly what's quoted in their petition. So this was the original theory, CSMA CD as part of the 1985 standard. Could you repeat the page that you're referring to? I'm sorry. Yes, Your Honor. 1512 is the standard that they're quoting? Uh-huh. So you said in the patent owner response that that 1985 standard and the CSMA CD doesn't apply to Schmidt, right? What we said, Your Honor, was that the petitioner had failed to connect the two. They asserted Schmidt used the 1985 standard. That was their obviousness theory. We asserted they have not proved that. There's no evidence in this petition. That's essentially what I said. You argued that Schmidt didn't use the 1985 standard and therefore their obviousness theory failed. Okay, so they come back in the reply and there is reference in the reply to the 1998 standard, correct? That's correct, Your Honor. But if I understand correctly, the only reference to the 1998 standard in the reply is to the half-duplex mode, correct? That's correct, Your Honor. And it's only in the server reply that they say even with full-duplex, the 1998 standard reveals this. That's correct, Your Honor. Okay. Yes, and that is first, second, and third theory. Right there. The fourth theory shows up in their opening brief on appeal here, which is the inner frame spacing completely divorced from all context of the specifications could be combined with Schmidt. That wasn't raised below in any of their three tries. Well, that's where they led us in the first instance to A5080 and that paragraph, right? I mean, where they say that they did preserve this just plucking out the inner frame. That's correct, Your Honor. That's what they argued. That's obviously incorrect. And if you look at page, we can just start at 5078 and walk through this. The middle of the page in their petition, 5078, says the IEEE 802.3 standard describes the carrier sense, multiple access with collusion detection method of the IEEE 802.3 protocol. It's not the name of the protocol. It is the method that they're referring to. Next paragraph, in the CSMA CD protocol described in the IEEE 802.3 standard, it goes on to describe that standard. It quotes from the carrier deference portion that I just quoted to Your Honor. It goes on for page after page, page 5079. Full paragraph at the bottom. Schmidt expressly teaches that the SLIM system uses the Ethernet protocol and therefore uses Ethernet's CSMA CD procedure of waiting a specified time period prior to transmission. It's unequivocal. That was their theory, and it's the only theory that's asserted. When they summarize on page 5080 and say, a person of ordinary skill in the art would have been motivated to apply the IEEE 802.3 standard's teaching of an inter-frame spacing, what are they referring to? What they've just described for three pages. The CSMA CD protocol. The board correctly found that this is the only theory asserted in the petition. The board correctly rejected it. And I'm happy to answer any other questions that Your Honors have, but if there are no other questions, I'll save the rest of my time. Okay. Thank you, Mr. Wilson. Thank both counsel in case it's submitted. Your Honor, may I take one? Nope. You're out of time.